State vs. Demareste.

## No. 10,351.

### THE STATE OF LOUISIANA VS. LOUIS DEMARESTE.

In the absence of statutory regulations courts can only guard against the abuse of the privilege of furnishing spirituous liquors to members of a jury as refreshments.

It is a safe rule, however, to be followed, to allow such refreshments only in case of necessity, on the order of the judge, and in moderate quantities. The supplying of the jury with it in bottles and flasks is reprehensible.

Ruling in case of State vs. Broussard affirmed.

APPEAL from the Fourteenth District Court, Parish of Calcasieu. *Read*, J.

*W. H. Rogers*, Attorney General, and *J. C. Gibbs*, Distrit Attorney, for the State, Appellee.

*Fournet & Pujo* for Defendant and Appellant.

The opinion of the Court was delivered by

McENERY, J. The accused was convicted of murder and sentenced to be executed; and he appeals from the verdict and sentence.

He was put on trial on the 20th February, and found guilty next day.

A motion for a new trial was filed, and among the reasons alleged for its consideration is that the members of the jury were furnished with and drank so freely of intoxicating liquors that they rendered themves unfit to deliberate upon the case.

In a recent case, State vs. Broussard, we said, in setting aside the verdict in that case, because of the excessive use of ardent spirits by two of the jurors; "We feel very confident that in thus ruling we make no departure from the line of jurisprudence under which it is stated

that the verdict of a jury in a criminal case is not to be vitiated by the mere fact that during their deliberations in a protracted trial the jury were allowed a moderate use of spirituous liquors as refreshments or as a stimulant.     *     *     *     *     *     *     *     *     *     *

"It would be difficult to formulate any affirmative rule, or to prescribe an inflexible limit to the practice, and courts can do no more than to guard against excesses in determining such questions."

The instant case, as in that case, shows an outrageous abuse of the privilege and justly deserves censure and rebuke.

In the short time of the trial the members of the jury were furnished with small flasks of whisky. There were no exceptional circumstances which rendered it necessary for the jury to be furnished with such refreshments. There was neither exhaustion nor sickness shown to exist as the condition of any member of the jury.

The officers who were in charge of the jury are positive in their declarations that no member of the jury was intoxicated. But the conduct of the jury was such as to leave the impression on the minds of others, and this inference from the testimony in the record, we think is indisputable, that if the members of the jury were not actually drunk they were unduly excited by the use of liquor, to the extent that they lost sight of the solemn duty upon which they were engaged. Their conduct was such as to bring into contempt and ridicule the administration of justice.

The jury was taken to a hotel at night, and while going through the streets of the City of Lake Charles, they were so boisterous as to attract police attention. At the hotel the conduct of the jury is thus described by a deputy sheriff: "I was acting as deputy sheriff, and I was one of the deputy sheriffs in charge of the jury who tried Louis Demareste. The jury lodged on the night of February 20 part of the time at Vincent's Hotel, from something after 10 o'clock until between 12 and 1. They did not remain at the hotel all night because the jury were rowdying and cutting up and Mr. Vincent ordered us to take them out of his house.     *     *     *     *     *     *     *     *     *     *     *     *

"I could not tell the language they used. They were playing all over the house. One would lie down and others would haul him over the floor by the heels."

This testimony as to the conduct of the jury is fully corroborated by other witnesses.

Vincent, the proprietor of the hotel, states that when the jury entered his hotel they were singing and made a great deal of noise, and when in the house they used bad language, which was heard all over the hotel.

On ascending the stairs to their room, they sang:

"We are climbing up the golden stairs."

In their debauch propriety at least should have prompted the selection of some other song, less suggestive of the painful duty which they were performing—the deliberating upon a case in which the punishment was death.

The members of the jury were either unnaturally stimulated and excited, or they were wanting in all those moral qualities which fit men for the discharge of civil duties.

It is in the record that when they were impaneled they were true, good and lawful men.

Therefore their unseemly and riotous conduct can be accounted for on no other hypothesis than that they were influenced by the intoxicants which had been furnished them.

This case affords another illustration of the danger to the administration of criminal justice in the abuse of the privilege of allowing ardent spirits, even in moderate quantity, to be furnished the members of the jury as refreshments. In the absence of statutory regulations courts can only guard against abuses of the privilege. It is a safe rule to follow to allow ardent spirits to be furnished only on the order of the judge, and in case of necessity, and in moderate quantity.

The practice of furnishing in bottles and flasks is reprehensible.

It is, therefore, ordered that the verdict and judgment appealed from be set aside, annulled and reversed, and the case be remanded to be proceeded with according to law.